

Christopher Lundberg, OSB No. 94108
clundberg@hk-law.com
Matthew E. Malmsheimer, OSB No. 03384
mmalmsheimer@hk-law.com
HAGLUND KELLEY HORNGREN JONES & WILDER LLP
101 S.W. Main Street, Suite 1800
Portland, Oregon 97204-3226
Phone: (503) 225-0777
Facsimile: (503) 225-1257

FILED'08 SEP 15 14:10 USDC-ORP

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TALIA HINMAN** and **MELINDA HINMAN**, individuals<br><br>Plaintiffs,<br><br>v.<br><br>**JOHN ALDEN LIFE INSURANCE COMPANY,** a Minnesota corporation, dba **ASSURANT HEALTH**<br><br>Defendant. | No. CV'08-1070 PK<br><br>**COMPLAINT**<br><br>(Action for violation of Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.) |

INTRODUCTION

In the prime of her youth, Talia Hinman was struck with Persistent Lyme Disease. This disease reduced her from a vibrant, talented student and gifted athlete with an active social life to a shadow of herself who was barely able to function, leading a life of virtual solitude. This action arises out of defendant's arbitrary and capricious abuse of its discretion in denying

Page 1 - **COMPLAINT**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\MM2482.wpd

coverage of the medical treatment for Ms. Hinman's Persistent Lyme Disease and saddling Ms. Hinman with over $90,000 in medically necessary expenses, despite the fact that the diagnosis and treatment of her condition is generally recognized in the medical community as effective and appropriate and that it ultimately cured Ms. Hinman's condition.

## PARTIES

1.

Talia Hinman is an individual and resident of Oregon. Ms. Hinman is covered by a health insurance policy with defendant John Alden Life Insurance Company. Melinda Hinman is Talia's mother and is the policy holder of an employee welfare benefit plan provided to her through her employer, Spring Creek Orchards Inc., and issued by defendant. At all times material, Talia Hinman was a dependent covered under her mother's employee benefit plan with defendant.

2.

Defendant John Alden Life Insurance Company is a Minnesota corporation with its principal place of business in Milwaukee, Wisconsin. Assurant Health ("Assurant"), is a trade name under which defendant operates, in cooperation with a number of other insurance providers, to market and administer its insurance products. At all times material, defendant, acting under the name Assurant Health, was the Claims Administrator and trustee for the

Page 2 - **COMPLAINT**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\MM2482.wpd

benefit plan that is the subject of this action ("the Plan").

## JURISDICTION

3.

Plaintiffs' claims relate to an employee welfare benefit plan as defined by ERISA, 29 U.S.C. §§ 1001 et seq., and the benefit plan that is the subject of this action is a plan under ERISA. Therefore, this court has jurisdiction over this action in accordance with 29 U.S.C. § 1132.

## VENUE

4.

Under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2), the District of Oregon is the appropriate venue for this action. Defendant administers the Plan in Oregon, the breach of the Plan occurred in Oregon, and a substantial amount of the actions that give rise to this action occurred in Oregon.

## FACTS

5.

Plaintiff Talia Hinman is 21 years of age, and was raised by her parents on their cherry orchard in Hood River, Oregon. For most of her life, she was well known for her vibrant personality, incredible stamina, humor, and outstanding athletic and intellectual abilities. Ms. Hinman's intellectual talents were so impressive that she was awarded the designation of a talented and gifted ("TAG") student, and her athletic achievements during her

Page 3 - **COMPLAINT**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\MM2482.wpd

freshman and sophomore years in high school caused others to describe her as a "fireball pitcher" and "beyond her years."

6.

However, in 2003, all of this changed dramatically for Ms. Hinman. At that time, she began experiencing joint pain, progressing to an almost unbearable level by the fall of 2004. Her academic and athletic performance dropped significantly. As time went on she began having continuing head aches and other painful symptoms day and night, she lost weight from a lack of appetite, she couldn't sleep well, and subsequently missed school quite frequently.

7.

As a result of these debilitating conditions, Ms. Hinman was forced to complete the remaining two years of high school from her bed at home, which cost her valuable college career-making athletic seasons and close relationships with friends. Ms. Hinman went from being a TAG student and impressive athlete with an active social life, to living a life of solitude and barely being able to function.

8.

Between January and October of 2004, Ms. Hinman was seen multiple times by her primary care physician, Dr. Anthony Gay, and she was referred to numerous different specialists, including a PNP Pediatric Gastroenterolgist, two additional separate

Page 4 - **COMPLAINT**

One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\MM2482.wpd

Gastroenterolgists, an Ear Nose and Throat specialist, a Neurologist, a Psychologist, an Infectious Disease specialist, and an Endocrinologist. Despite this intense medical involvement, Ms. Hinman saw no perceptible improvement in her health or overall well-being.

9.

Seeing no improvement in her health, Ms. Hinman decided to see Dr. Christine Green, an expert in the diagnosis and treatment of Lyme disease who practices medicine in the San Francisco Bay Area.

10.

Dr. Green graduated from University of California, San Diego School of Medicine and trained in Family Practice in Stanford University's Family Practice Residency Program. Dr. Green has treated Lyme disease for nearly fifteen years. In that time, she has carefully followed the research and scientific knowledge regarding this bacterial disease.

11.

Dr. Green is a reputable physician expert in the diagnosis and treatment of Lyme's disease who practices in accordance with the standard of care as defined by the International Lyme and Associated Disease Society (ILADS) evidence-based guidelines for treating Lyme disease.

Page 5 -   **COMPLAINT**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\MM2482.wpd

12.

In order to diagnose Ms. Hinman's condition, Dr. Green performed a numerous tests to consider or dispel alternative etiological causes, such as thyroid dysfunction, brain abnormalities, and chemical and hormonal imbalances. Ms. Hinman's laboratory tests showed positive for exposure to Lyme disease. As a result of these tests, along with Ms. Hinman's neurological, arthritic, and gastrointestinal symptoms, Dr. Green diagnosed Ms. Hinman with Persistent Lyme disease.

13.

Dr. Green's diagnosis of Persistent Lyme disease was founded on the evidence-based guidelines promulgated by the Centers for Disease Control ("CDC") and the National Institute of Allergy and Infectious Disease ("NIAID"), and ILADS.

14.

Persistent Lyme disease is more resistant to treatment and more likely to produce a relapse, and accordingly, the Evidence based guidelines support the medical experts advice to treat it with prolonged and repeated dosages of antibiotics in order to prevent or delay any recurrence of the disease.

15.

Dr. Green noted that Ms. Hinman responded well, but not completely, to oral medicines. Accordingly, Dr. Green placed Ms. Hinman on intravenous antibiotic treatment in accordance with the

Page 6 - **COMPLAINT**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\MM2482.wpd

Evidence based guidelines. As a result of that treatment, Ms. Hinman returned to her normal good health and was able to return to work, school, and her previously active life.

16.

Dr. Green's diagnosis and treatment plan followed a well-established and peer-supported treatment protocol involving an individualized assessment of Ms. Hinman's condition and needs. Dr. Gay, Ms. Hinman's primary physician, reviewed Dr. Green's recommendations and also found them satisfactory.

17.

Despite the fact that the diagnosis and treatment was in accord with generally accepted and promulgated standards, and the fact that the treatment effectively cured Ms. Hinman's Persistent Lyme Disease, Defendant denied coverage of the treatment.

18.

According to defendant, Ms. Hinman did not have Lyme Disease because she had not tested positive under the Western Blot test and her symptoms did not follow its view of the general course of Lyme Disease. Alternatively, defendant determined that there was "no evidence based medicine that treatment for any longer than one month has any improvement in outcome." For these reasons, defendant claimed that Ms. Hinman's diagnosis and treatment were not medically necessary and were "experimental/investigational" and, thus, were excluded under the Plan.

Page 7 -   **COMPLAINT**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\MM2482.wpd

19.

Both the CDC and the Food and Drug Administration concur that the two-tier laboratory diagnostic criteria utilizing the ELISA and Western Blot tests should not be relied upon exclusively as a means to diagnose Lyme Disease. According to the CDC, these tests lack sensitivity and "fail[] to detect up to 90% of cases" of Lyme disease.

20.

Defendant issued its final denial of Ms. Hinman's claim in a letter dated November 6, 2007.

21.

Defendant's decision to deny coverage ignores the medical consensus regarding Ms. Hinman's Persistent Lyme Disease and contradicts the reasonable and ordinary understanding of the terms of the Plan. As such, it is an arbitrary and capricious abuse of Defendant's discretion, is a breach of its obligations under the benefit plan between Defendant and Plaintiffs, and is otherwise not in accordance with law.

22.

As a result of Defendant's denial of coverage, plaintiffs have been denied benefits under the Plan in an amount to be specifically proved at trial but currently estimated to be $95,000.

Page 8 -   **COMPLAINT**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\MM2482.wpd

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

23.

Defendant initially denied coverage of treatment for Ms. Hinman's condition in a letter dated March 15,2006. Plaintiffs have since exhausted all of the administrative remedies provided by Defendant under the subject benefit plan in an effort to get defendant to reverse its decision.

**FIRST CLAIM FOR RELIEF**

(Violation of Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*)

24.

Plaintiffs reallege each and every allegation set forth above and further alleges the following facts.

25.

As set forth above, Plaintiffs are entitled under the terms of the Plan to coverage of the diagnosis and treatment of Ms. Hinman's Persistent Lyme Disease.

26.

As set forth above, Defendant's denial of coverage is an arbitrary and capricious breach of its obligations under the Plan, which has damaged Plaintiffs for the amount of lost benefits.

27.

Plaintiff is entitled to her reasonable attorney fees in accordance with 29 U.S.C. § 1132.

Page 9 -   **COMPLAINT**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\MM2482.wpd

**WHEREFORE**, Plaintiffs prays for the following relief:

1. On their First Claim for Relief, for judgment against defendant in an amount to be specifically proven at trial but currently estimated to be $95,000;

2. For their reasonable attorney fees;

3. For their costs and disbursements; and

4. For any other relief that the court deems to be just, equitable, or appropriate under the circumstances.

DATED this **15** day of September, 2008.

HAGLUND KELLEY HORNGREN JONES & WILDER LLP

By:_____
Christopher Lundberg, OSB No. 94108
Matthew E. Malmsheimer, OSB No. 03384
Attorneys for Plaintiff

Page 10 - **COMPLAINT**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\MM2482.wpd