**SAMUEL K. ANDERSON, Oregon State Bar ID Number 035060**
Internet E-mail address: sanderson@davisrothwell.com
**DAVIS ROTHWELL EARLE & XOCHIHUA P.C.**
111 SW Fifth Avenue, Suite 2700
Portland, Oregon 97204
Telephone: (503) 222-4422
Facsimile: (503) 222-4428

**JOSHUA BACHRACH,** *pro hac vice* **application to be submitted**
Internet E-mail address: joshua.bachrach@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKLER, LLP**
Independence Square West
The Curtis Center, Suite 1130 East
Philadelphia, PA 19106-3308
Telephone: (215) 627-6900
Facsimile: (215) 627-2665

Attorneys for Defendant John Alden Life Insurance Company dba Assurant Health

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **TALIA HINMAN** and **MELINDA HINMAN**, | No. CV-08-1070 PK |
| Plaintiffs, | |
| v. | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT** |
| **JOHN ALDEN LIFE INSURANCE COMPANY** d/b/a **ASSURANT HEALTH,** | |
| Defendant. | |

Defendant John Alden Life Insurance Company (hereinafter "Defendant" or "John

Alden Life") hereby submits this Memorandum of Law in Support of its Cross-Motion for

Page 1 -   DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS CROSS-MOTION FOR
SUMMARY JUDGMENT   L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

Summary Judgment. This case involves John Alden Life's denial of Plaintiffs' claim for health benefits under an ERISA plan. The claim was denied because (1) the diagnosis of Lyme disease is unsupported and (2) the long-term antibiotic treatment administered to Talia Hinman is experimental and, therefore, excluded from coverage. Because John Alden Life's decision cannot be considered arbitrary and capricious, it is entitled to judgment in its favor.

## LEGAL ANALYSIS

**A.    Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment should be entered when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the movant is entitled to judgment in its favor as a matter of law. Fed.R.Civ.P. 56(c). Factual disputes that are irrelevant or unnecessary are not material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (19867). The party seeking summary judgment must show that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once this burden is met, the burden then shifts to the non-movant to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact for trial. *Matsushita*, 475 U.S. at 587.

**B.    ERISA Standard of Review**

When an ERISA plan vests the plan fiduciary with the discretionary authority to determine benefit eligibility, courts review a decision to deny coverage for abuse of discretion. *See Saffon v. Wells*, 522 F.3d 863, 866 (9th Cir. 2008) (citing *Firestone Tire & Rubber v. Bruch*,

Page 2 -    DEFENDANT'S MEMORANDUM OF LAW IN
           SUPPORT OF ITS CROSS-MOTION FOR
           SUMMARY JUDGMENT    L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 SW Fifth Avenue, Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile (503) 222-4428

489 U.S. 101, 115 (1989)); *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999). A plan must unambiguously provide discretion to the plan fiduciary, or else the default standard of review is *de novo*. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999)(en banc). Where a plan fiduciary has discretion, a motion for summary judgment provides the "conduit" for bringing the issue before the court. *Bendixen*, 185 F.3d at 942. Here, the Plan grants to John Alden Life to make eligibility decisions. (Declaration of Samuel K. Anderson, Ex. A, p. 20 and 56).

As explained by the Ninth Circuit, it is primarily the job of plan fiduciaries and not the courts to evaluate a claimant's eligibility for benefits under an ERISA plan:

> When [courts] review for abuse of discretion, it is because the plan has put the locus for decision in the plan administrator, not in the courts, so [courts] cannot substitute [their] judgment for the plan administrator. [Courts] can set aside the administrator's discretionary determination only when it is arbitrary and capricious. . . . [A] decision grounded on any reasonable basis is not arbitrary and capricious and . . . in order to be subject to reversal, an administrator's factual findings that a claimant is not totally disabled must be clearly erroneous.

*Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004) (internal quotations omitted).

ERISA plan fiduciaries abuse their discretion only when they "render decisions without any explanation . . . construe provisions of the plan in a way that conflicts with the plain language of the plan . . . or 'rely on clearly erroneous findings of fact in making a benefit determination.'" *Bendixen*, 185 F.3d at 944 (quoting *Taft v. Equitable Life Assur. Soc'y*, 9 F.3d 1469, 1473 (9th Cir. 1993)). Under the clearly erroneous standard a denial of benefits can only

Page 3 -  DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS CROSS-MOTION FOR
SUMMARY JUDGMENT  L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

be overturned if the court is left with "a definite and firm conviction that a mistake has been committed." *Taft*, 9 F.3d at 1472.

A court reviewing a plan fiduciary's interpretation of the administrative record does not decide whose interpretation is most persuasive but instead decides "whether the plan administrator's interpretation is reasonable." *Clark v. Wash. Teamsters Welfare Trust*, 8 F.3d 1429, 1432 (9th Cir. 1993). As long as the plan's decision has a rationale basis, the court may not substitute its own judgment for that of the plan fiduciary even if the court would have reached a different decision under *de novo* review. *Taft*, 9 F.3d at 1472. "The mere fact that the plan administrator's decision is contrary to some evidence in the record does not show that the decision is clearly erroneous." *Snow v. Standard Ins. Co.,* 87 F.3d 327, 331 (9th Cir. 1996), *overruled on other grounds by Kearney, supra*.

The abuse of discretion standard of review applies even when the defendant is acting under a conflict of interest. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006) (overruling *Atwood v. Newmont Gold Co.*, 45 F.3d 1317 (9th Cir. 1995)). Recently, in *Metropolitan Life Ins. Co., v. Glenn*, 128 S. Ct. 2343 (2008), the Supreme Court of the United States commented on the standard of review in ERISA cases. The Court held that a plan fiduciary's dual role as decision maker and insurer creates a conflict of interest. *Id.* However, the conflict of interest does not change the standard of review from deferential to *de novo*. *Id.* Instead, any conflict of interest will be weighed as a "factor" which a court will consider when deciding if the denial of benefits was arbitrary and capricious. *Id.*

The Supreme Court in *Glenn* provided guidance to courts on how a conflict of interest should be considered. First, the Court held that "a conflict of interest is just one factor

Page 4 -   DEFENDANT'S MEMORANDUM OF LAW IN
          SUPPORT OF ITS CROSS-MOTION FOR
          SUMMARY JUDGMENT   L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 SW Fifth Avenue, Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile (503) 222-4428

[which] will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tie-breaking factors inherent or case-specific importance." Thus, a conflict of interest truly only matters when the case is a close call. Additionally, the Court held that it was neither "necessary [n]or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." *Id.* As the Court recognized, creating such rules "would create further complexity, and in time an expense to a process that may already be too costly for many of those who seeks redress." *Id.*

    C.   The Court's Review is Limited to the Administrative Record

Under the law of the Ninth Circuit, "a district court may review only the administrative record when considering whether the plan administrator abused its discretion." *Abatie*, 458 F.3d at 970. *See also Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan,* 349 F.3d 1098, 1110 (9th Cir. 2003) ("While under an abuse of discretion standard [the court's] review is limited to the record before the plan administrator . . . . " (citation omitted)); *Kearney,* 175 F.3d at 1090-91 (holding that the standard of review decides the evidence that a district court may consider). Based on the deferential standard of review applicable to this case, the court may only consider the evidence that is in the administrative record.

## FACTUAL BACKGROUND

Plaintiff Talia Hinman ('Ms. Hinman") began complaining about a multitude of health problems commencing in 2002, with the onset of flu-like symptoms. (Declaration of Samuel K. Anderson, Ex. A, p. 77). Between January and March 2003 she developed a hip

Page 5 -    DEFENDANT'S MEMORANDUM OF LAW IN
            SUPPORT OF ITS CROSS-MOTION FOR
            SUMMARY JUDGMENT   L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 SW Fifth Avenue, Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile (503) 222-4428

problem which was diagnosed as bursitis by orthopedic physician, George M. Stanley, M.D. (Plaintiffs' Exhibit 6, p.1). On December 12, 2003, Dr. Stanley stated that Ms. Hinman's MRI which showed intrapelvic fluid. (Plaintiffs' Exhibit 6, p.1). Ms. Hinman then complained of low back and neck pain. (Declaration of Samuel K. Anderson, Ex. A, p. 77). In March 2004, she attempted to play softball, but complained of nausea, dizziness, trouble concentrating and gastrointestinal problems. (Declaration of Samuel K. Anderson, Ex. A, p. 89). On April 24, 2004, Ms. Hinman was seen by a pediatric nurse practitioner for evaluation. Although Ms. Hinman had a number of complaints, the nurse practitioner noted that Ms. Hinman was in no acute distress at the time of her visit and only reported not feeling well for the last two and a half months, contrary to Ms. Hinman's claim that these symptoms were interfering with her quality of life for years. (Exhibit 6, p.5).

      This litigation surrounds a course of treatment administered to Ms. Hinman by Christine Green, M.D. in late 2004. Dr. Green diagnosed Ms. Hinman as having Lyme disease with Arthritis, Encephalopathy and Neuropathy, despite the fact that a Western Blot test was *negative*. (Declaration of Samuel K. Anderson, Ex. A, p. 91). Dr. Green administered oral antibiotics to Ms. Hinman from October 12, 2004 through at least January 4, 2005 (Declaration of Samuel K. Anderson, Ex. A, p. 90). She then administered intravenous antibiotics over a three month period involving two courses, once from July 19 through September 30, 2005 and then, again, from October 1 through October 31, 2005. (Declaration of Samuel K. Anderson, Ex. A, p. 90). This course of treatment, however, is considered experimental/investigative and, therefore, the claim for coverage was denied.

      Plaintiffs submitted a Level One Appeal for reconsideration of the denial of coverage

Page 6 -    DEFENDANT'S MEMORANDUM OF LAW IN
           SUPPORT OF ITS CROSS-MOTION FOR
           SUMMARY JUDGMENT   L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 SW Fifth Avenue, Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile (503) 222-4428

on February 27, 2006. In response to Plaintiffs' appeal, John Alden Life sent the records to Dr. Scott Brumblay, who concluded that the records did not meet the accepted criteria for the diagnosis of Lyme disease. (Declaration of Samuel K. Anderson, Ex. A, p. 90). Dr. Brumblay stated that Ms. Hinman's "clinical symptoms might occur with a wide variety of conditions." (Declaration of Samuel K. Anderson, Ex. A, p. 90). He noted that although Ms. Hinman lived in an area where she could be exposed to infection, the record is devoid of "documentation showing an erythema migrant rash" and explained that the "serologist tests do not meet the recommended criteria for positivity." (Declaration of Samuel K. Anderson, Ex. A, p. 90). Dr. Brumblay further stated that intravenous antibiotic treatment beyond 28 days is of "unproven efficacy and is experimental/investigative." Based on these facts, John Alden Life upheld its original decision that this treatment is investigative/experimental and excluded pursuant to the Plan.[1]

Plaintiffs submitted a Second Level Appeal on July 31, 2007. Upon receipt, John Alden Life forwarded the matter for an independent review by John L. Brusch, M.D., who is Board Certified in Internal Medicine and Infectious Disease. Dr. Brusch stated that he did not believe that Ms. Hinman had "Lyme disease at any stage." (Declaration of Samuel K. Anderson, Ex. A, p. 92). He also opined that Ms. Hinman's clinical course was very atypical for Lyme disease, and that she had no significant supportive evidence of having Lyme disease. (Declaration of Samuel K. Anderson, Ex. A, p. 92). Additionally, even if Ms. Hinman did have Lyme disease, based on the medical literature, the course of long-term antibiotic treatment still was still experimental/investigative, as there is no "evidence based medicine that treatment for longer than one month has any improvement in outcome." (Declaration of Samuel K. Anderson,

---

[1] The relevant Plan provisions are set forth below.

Page 7 -  DEFENDANT'S MEMORANDUM OF LAW IN
         SUPPORT OF ITS CROSS-MOTION FOR
         SUMMARY JUDGMENT  L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 SW Fifth Avenue, Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile (503) 222-4428

Ex. A, p. 92).

In their second appeal, Plaintiffs presented articles based on animal models and limited human application. (Declaration of Samuel K. Anderson, Ex. A, p. 92). Dr. Brusch noted that only one article presented by Ms. Hinman bore any significance. (Declaration of Samuel K. Anderson, Ex. A, p. 92). Dr. Brusch noted that the one relevant article represented the "best-conducted study that was submitted" and involved a double clinical trial. (Declaration of Samuel K. Anderson, Ex. A, p. 92). However, that study concluded that there was *"no beneficial treatment effect of prolonged treatment upon cognitive function or the laboratory measurements of persistent infection"* and that the study did *not* support the use of antibiotic therapy in patients with Post Lyme Syndrome. (Declaration of Samuel K. Anderson, Ex. A, p. 92). Dr. Brusch concluded that the remainder of the literature was of only limited validity as it was either contrary to plaintiffs' position or not relevant to the issues. (Declaration of Samuel K. Anderson, Ex. A, p. 92). Therefore, John Alden, again, concluded that the treatment is experimental/investigative and not covered under the Plan. Plaintiffs responded with this lawsuit.

## THE DENIAL OF BENEFITS WAS NOT ARBITRARY AND CAPRICIOUS

Under the plain language of this Plan, only "medically necessary charges are eligible for payment. The Plan defines the term "Medically Necessary" as follows:

A service or supply that We determine, at Our discretion, to be:

1. necessary for the symptoms and diagnosis or treatment of the Illness or Injury;

2. provided for the diagnosis, or the direct care and treatment, of the Illness or Injury;

3. in accordance with generally accepted medical practice;

Page 8 -   DEFENDANT'S MEMORANDUM OF LAW IN
           SUPPORT OF ITS CROSS-MOTION FOR
           SUMMARY JUDGMENT  L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

   4. not in excess of that level of care that is needed to provide safe, adequate and appropriate diagnosis or medical treatment;

   5. not for convenience purposes (for example, the use of a brace to enable skiing or playing basketball);

   6. the most appropriate level of medical care the Insured Person needs;

   7. furnished within the framework of generally accepted methods or medical management currently used in the United States;

   8. *not Experimental or Investigational as defined in this Certificate*; and

   9. not for Maintenance Care as defined in this Certificate.

(Declaration of Samuel K. Anderson, Ex. A, p. 20) (emphasis added).

The term "Experimental or Investigational" is defined as follows:

Experimental or Investigational

A service or supply is Experimental or Investigational when We determine that it is:

   1. not of proven benefit for the particular diagnosis or treatment of a particular condition, as established by any of the reference compendia cited below; or

   2. not generally recognized by the medical community as effective or appropriate for the particular diagnosis or treatment of a particular condition; or

   3. provided or performed in special settings for research purposes or under a controlled environment or clinical protocol.

(Declaration of Samuel K. Anderson, Ex. A, p. 16).

The following criteria are used to determine whether a treatment or service is

"Experimental or Investigational":

///
///

Page 9 -   DEFENDANT'S MEMORANDUM OF LAW IN
           SUPPORT OF ITS CROSS-MOTION FOR
           SUMMARY JUDGMENT   L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

> We will apply the following five criteria in determining whether services or supplies are Experimental or Investigational:
>
> 1.      Any medical device, drug, or biological product must have received final approval to be marketed by the FDA for the particular diagnosis or condition. Any other approval granted as an interim step in the FDA regulatory process, e.g., an Investigational Device Exemption or an Investigational New Drug Exemption, is not sufficient. Once FDA approval has been granted for a particular diagnosis or condition, use of the medical device, drug or biological product for another diagnosis or condition will require that one or more of the following established reference compendia recognize the usage as appropriate medical treatment:
>
>> a.   The American Medical Association Drug Evaluations;
>>
>> b.   The American Hospital Formulary Service Drug Information; or
>>
>> c.   The United States Pharmacopeia Drug Information.
>
> As an alternative to such recognition in one or more of the compendia, the usage of the drug will be recognized as appropriate if it is recommended by a clinical study and recommended by a review article in a major peer-reviewed professional journal. A medical device, drug or biological product that meets the above tests will not be considered Experimental or Investigational.
>
> In any event, any drug which the FDA has determined to be contraindicated for the specified treatment for which the drug has been prescribed will be considered Experimental or Investigational;
>
> 2.   Conclusive evidence from the published peer-reviewed medical literature must exist that the technology has a definite positive effect on health outcomes; such evidence must include

Page 10 - DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT   L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 SW Fifth Avenue, Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile (503) 222-4428

> well-designed investigations that have been reproduced by non-affiliated authoritative sources, with measurable results, backed up by the positive endorsements of national medical bodies or panels regarding scientific efficacy and rationale;
>
> 3. Demonstrated evidence as reflected in the published peer-reviewed medical literature must exist that, over time, the technology leads to improvement in health outcomes, i.e., the beneficial effects outweigh any harmful effects;
>
> 4. Proof as reflected in the published peer-reviewed medical literature must exist that the technology is at least as effective in improving health outcomes as established technology, or is usable in appropriate clinical contexts in which established technology is not employable; and
>
> 5. Proof as reflected in the published peer-reviewed medical literature must exist that improvements in health outcomes, as defined in item 3 above, is possible in standard conditions of medical practice, outside clinical investigatory settings.

(Declaration of Samuel K. Anderson, Ex. A, p. 16-17).

In cases involving *the same intravenous antibiotic treatment at issue here*, courts have upheld the denial of benefits as experimental. In *Egan v. New York Care Plus Ins. Co.,* 277 A.D.2d 652 (N.Y. 2000), the plaintiff was diagnosed with Lyme disease and his physician requested pre-approval for intravenous antibiotic therapy. The defendant insurance company denied the request on the basis that the treatment is not "generally accepted therapy" in the treatment of Lyme disease. The plaintiff alleged fraud based on the plan's "policy of limiting reimbursement for intravenous antibiotic treatment for Lyme disease" and "knowingly maintain[ing] a policy of denying benefits on the ground that a given mode of therapy is not generally accepted." The court rejected these arguments and concluded that the denial was in accordance with the provisions of the insurance contract. The decision in *Egan* is even more significant because ERISA did not apply. Therefore, the court agreed with the defendant without

Page 11 -   DEFENDANT'S MEMORANDUM OF LAW IN
            SUPPORT OF ITS CROSS-MOTION FOR
            SUMMARY JUDGMENT   L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 SW Fifth Avenue, Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile (503) 222-4428

giving any deference to the defendant's conclusion.

The same conclusion was reached in *Risenhoover v. Bayer Corp. Group Health Plan*, 83 F.Supp.2d 408 (S.D.N.Y. 2000). In that case, the employer's health Plan covered only "eligible expenses" that were of "medical necessity." Plaintiff was diagnosed with Lyme Disease by her treating physician, who prescribed intravenous antibiotic therapy. Plaintiff began seeing another physician who also diagnosed her with Lyme disease and that doctor sought pre-approval for IV antibiotic treatment. The treatment was initially approved, but later denied based on an outside physician's conclusion that the claimant did not have Lyme disease and, therefore, the antibiotic treatment was not medically necessary. *Id.* at 412. In a follow-up evaluation, one physician even stated that "ongoing antibiotics could potentially do her more harm than good." *Id*.

The court noted that Lyme disease can be difficult to diagnose, particularly where the patient has complained of various symptoms over a period of time. *Id.* Because the denial of benefits was based on the opinions of doctors who concluded that plaintiff did not have Lyme disease and that IV antibiotic treatment is not appropriate, the court held that the insurer's denial of coverage was not unreasonable, let alone arbitrary and capricious. *Id.*

Although the services at issue were different, the Ninth Circuit also upheld the denial of benefits for experimental/investigational treatment in *Parks v. Blue Cross & Blue Shield*, 1997 U.S. App. LEXIS 13110 (9th Cir. 1997). There, the insurance company denied pre-authorization for medical benefits for treatment of cancer after determining that the proposed treatment was experimental/investigational. *Parks*, 1997 U.S. App. LEXIS 13110 at *1. The

Page 12 -   DEFENDANT'S MEMORANDUM OF LAW IN
           SUPPORT OF ITS CROSS-MOTION FOR
           SUMMARY JUDGMENT   L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 SW Fifth Avenue, Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile (503) 222-4428

insured brought an ERISA action against the insurance company for the wrongful denial of benefits. *Id.* After reviewing the decision, the court granted the insurer's summary judgment motion. *Id.* On appeal, the Ninth Circuit affirmed, concluding that substantial evidence supported the determination that the plan did not abuse its discretion when it concluded that the treatment was experimental. *Id.* The court found that the policy language allowed such a finding in the plan's discretion and that the plan properly relied on the opinion of an expert when it reached the conclusion that the treatment was experimental. *Id.* The court noted that even where substantial evidence exists to support two inconsistent conclusions, a court must defer to the plan's decision. *Id.* at *10.

In *Ortlieb v. United Healthcare Choice Plans*, 387 F.3d 778 (8th Cir. 2004), the insured's health plan excluded services which were experimental, investigational or unproven. The insured's physician diagnosed her with a myriad of illnesses and prescribed Total Parenteral Nutrition (TPN) therapy. *Id.* The insurer, based on the assessments of physicians, including an outside consultant, denied coverage on the grounds that TPN was investigational and not supported by peer literature. *Id.* In affirming the district court's grant of summary judgment in favor of the insurer, the court held that the insurer's decision to deny coverage was supported by substantial evidence and was, therefore, reasonable.

The facts in the cases cited above, especially *Risenhoover* and *Egan*, closely parallel Ms. Hinman's claim. Ms. Hinman was ill for a number of years prior to being diagnosed with Lyme disease by Dr. Green. John Alden Life reviewed plaintiff's medical records on each appeal and sent the records for evaluation by physicians on two separate occasions. During the second appeal, Ms. Hinman's file was forwarded to Dr. John L. Brusch, M.D. who specializes in

Page 13 -   DEFENDANT'S MEMORANDUM OF LAW IN
            SUPPORT OF ITS CROSS-MOTION FOR
            SUMMARY JUDGMENT   L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 SW Fifth Avenue, Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile (503) 222-4428

Internal Medicine and Infectious Disease. (Declaration of Samuel K. Anderson, Ex. A, p. 92). Dr. Brusch concluded that Ms. Hinman did not have Lyme disease "in any stage." (Declaration of Samuel K. Anderson, Ex. A, p. 92). He based his opinion on the fact that her Western Blot test was negative and that there was no documentation of tick exposure or erythema migraines. (Declaration of Samuel K. Anderson, Ex. A, p. 92). He further stated that the "clinical course is quite atypical for Lyme disease." (Declaration of Samuel K. Anderson, Ex. A, p. 92). Thus, Dr. Brusch disagreed with Dr. Green's diagnosis. (Declaration of Samuel K. Anderson, Ex. A, p. 92). He also concluded that "intrinsically the treatment of diagnosis-unsupported Lyme disease with this regimen is experimental/investigational." (Declaration of Samuel K. Anderson, Ex. A, p. 92).

Dr. Brusch further stated that "there is no evidence-based medicine that supports the approach of prolonged treatment of Lyme disease." (Declaration of Samuel K. Anderson, Ex. A, p. 92). Significantly, he told John Alden Life that "[e]ven if the patient did have Lyme disease there is no evidence based medicine that treatment for longer than one month has any improvement in outcome." (Declaration of Samuel K. Anderson, Ex. A, p. 92).

Dr. Brusch considered the articles that were submitted by Ms. Hinman in support of her claim. However, he noted that there was nothing contained therein that was contrary to his expressed opinions. (Declaration of Samuel K. Anderson, Ex. A, p. 92). The articles that Plaintiffs presented were based on animal models and had very limited human application. (Declaration of Samuel K. Anderson, Ex. A, p. 92). He noted only one article which bore any significance. That article discussed what he believed was the "best-conducted study that was submitted," involving a double clinical trial. Declaration of Samuel K. Anderson, Ex. A, p. 92).

Page 14 -    DEFENDANT'S MEMORANDUM OF LAW IN
             SUPPORT OF ITS CROSS-MOTION FOR
             SUMMARY JUDGMENT    L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 SW Fifth Avenue, Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile (503) 222-4428

However, the article actually supports the denial of the claim. The study concluded that there was "no beneficial treatment effect of prolonged treatment upon cognitive function or the laboratory measurements of persistent infection," therefore, "the study did not support the use of additional antibiotic therapy . . . in patients with 'Post Lyme Syndrome.'"

While the treatment at issue was different, the decision in *Tillery v. Hoffman, Inc.*, 280 F.3d 1192 (8th Cir 2002), is instructive. There, the claims administrator performed research which led to the conclusion that procedure was experimental and coverage was denied. The examiner presented her findings to a physician who conducted an independent review which agreed that the treatment was experimental. The court held that given the investigation undertaken by the insurer, the denial of the claim was not arbitrary and capricious, despite a number of significant procedural violations by the plan.

Here, there are no procedural irregularities. On the contrary, John Alden Life offered Plaintiffs multiple appeals to prove the claim. More important, John Alden Life presented the issue to two physicians, both of whom conducted independent reviews and assessments. Both doctors determined that Ms. Hinman did not have Lyme disease. Moreover, even if Ms. Hinman's diagnosis was confirmed, the doctors concluded that there was no evidence based medicine that proved that the long-term use of antibiotics was successful in treating the condition. Under these facts and the Plan language, the denial of benefits cannot be considered arbitrary and capricious. After all, the same conclusion was reached by the court in *Egan* under *de novo* review.

As previously stated, the fact that there may be some contrary evidence does not make the Plan's decision in this case arbitrary and capricious. *Taft*, 9 F.3d at 1473. *See also*,

Page 15 -   DEFENDANT'S MEMORANDUM OF LAW IN
            SUPPORT OF ITS CROSS-MOTION FOR
            SUMMARY JUDGMENT  L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 SW Fifth Avenue, Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile (503) 222-4428

*Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (the district court should uphold the decision of an ERISA plan administrator "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith"). ERISA plans are not required to defer to the opinion of a treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). Instead, deference is owed to the decision of the plan fiduciary – John Alden Life. Based on the foregoing, John Alden Life acted within its discretion when it concluded that (1) Plaintiffs failed to prove that Ms. Hinman had Lyme disease and (2) the treatment provided by Dr. Green was experimental and excluded from coverage.

## CONCLUSION

Two other courts have entered judgment in favor of defendants after concluding that intravenous antibiotic therapy for the treatment of Lyme disease is experimental. One court did so under *de novo* review without any deference to the insurer. Under the plain language of the Plan in this case, the treatment at issue here is also experimental. Therefore, it is excluded from coverage. Defendant John Alden Life did not abuse its discretion when it denied the claim. Accordingly, John Alden Life is entitled to judgment in its favor.

DATED this 8th day of June, 2009.

**DAVIS ROTHWELL EARLE & XÓCHIHUA P.C.**

By  */s/ Samuel K. Anderson*
**SAMUEL K. ANDERSON, OSB # 035060**
(503) 222-4422
Attorneys for Defendant John Alden Life Insurance Company dba Assurant Health

Page 16 -   DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS CROSS-MOTION FOR
SUMMARY JUDGMENT   L:\18\HINMAN\PLD\mm cross-motion SJ.wpd

DAVIS ROTHWELL
EARLE & XÓCHIHUA P.C.
111 SW Fifth Avenue, Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile (503) 222-4428