Christopher Lundberg, OSB No. 94108
clundberg@hk-law.com
Matthew E. Malmsheimer, OSB No. 03384
mmalmsheimer@hk-law.com
HAGLUND KELLEY HORNGREN JONES & WILDER LLP
101 S.W. Main Street, Suite 1800
Portland, Oregon 97204-3226
Phone: (503) 225-0777
Facsimile: (503) 225-1257

    Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TALIA HINMAN** and **MELINDA HINMAN**, individuals<br><br>    Plaintiffs,<br><br>    v.<br><br>**JOHN ALDEN LIFE INSURANCE COMPANY,** a Minnesota corporation, dba **ASSURANT HEALTH**<br><br>    Defendant. | No.  3:08-CV-01070-PK<br><br>**CONSOLIDATED RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY** |

## I.    INTRODUCTION.

In diagnosing and treating Thalia Hinman's Lyme disease, her treating physician, Dr. Christine Green, a Stanford-trained physician who specializes in the treatment of Lyme disease, followed diagnostic and treatment protocols that are the standard of care as recognized by the

Page 1 -    **CONSOLIDATED RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\j3284.wpd

International Lyme and Associated Disease Society ("ILADS") and that are supported by voluminous clinical trials and medical research. Despite that, defendant nonetheless denied coverage of Ms. Hinman's treatment and care, claiming that she did not have the disease and that, in any event, the treatment was experimental. Defendant attempts to convince this Court that its decision in that regard was reasonable. In order to do so, however, defendant must gloss over the fact that its review of Ms. Hinman's claim placed undue weight on a clinically inappropriate criteria that supported its conclusion, while repeatedly ignoring critical medical evidence establishing that Ms. Hinman had late-stage Lyme disease. It also must ignore the fact that its interpretation of the exclusion of Ms. Hinman's treatment rested on terms and conditions that contradicted the plain terms of its insurance policy. In addition to those fatal mistakes, defendant misreads the relevant law and relies on caselaw that is plainly inapplicable to this case. For the reasons set forth below and in plaintiff's original motion, defendant's decision was arbitrary and capricious as a matter of law. Hence, this Court should grant plaintiff's motion for summary judgment.

## II.    DISCUSSION.

Dr. Christine Green, Ms. Hinman's treating physician, diagnosed her with Lyme disease and treated her condition based on widely accepted evidence based guidelines that were developed by ILADS and that are based on extensive clinical studies and peer reviewed medical research. See Malms. Dec., Exs. 6, 7, and 14. Defendant attempts to discount that diagnosis.[1] However, it can

---

[1] Defendant seeks to discredit Ms. Hinman's treating physician by claiming that "Dr. Green is not a specialist in lyme disease. She is a family practice doctor." Def.'s Mem. in Opp. at p. 3. Defendant is simply wrong in its assessment of Dr. Green's credentials. In addition to

Page 2 -    **CONSOLIDATED RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\j3284.wpd

do so only by excessively relying on a statistical criteria developed by the Centers for Disease Control ("CDC") that the CDC itself cautions should not be used to diagnose the disease, while ignoring compelling medical evidence that Ms. Hinman indeed suffered from the disease. Given such willful blindness to the medical evidence, the structural conflict of interest under which defendant was operating when it denied Ms. Hinman's claim is particularly troubling, and it should be given substantial weight by this Court.

> **A.** **Defendant Ignored Critically Important Medical Evidence Supporting Dr. Green's Diagnosis that Talia Hinman had Lyme Disease.**

Defendant contends that its reviewing physicians' conclusion that Ms. Hinman did not have Lyme disease was reasonable based on the medical evidence before them. However, the only way that those physicians could reach that conclusion was by ignoring critical medical evidence in the record and by placing an excessive weight on criteria developed by the CDC that is clinically inappropriate for diagnosing Lyme disease.

First, as defendant notes, its reviewing physician Dr. John R. Brusch concluded that there was "no documentation of tick exposure." Defendant's Memorandum in Support of its Cross-Motion ("Def.'s Mem. in Support") at 14. However, Dr. Brusch's conclusion (and indeed all of

---

being a Stanford trained family-practice physician, Dr. Green is a member of the International Lyme and Associated Diseases Society ("ILADS") and is considered an expert in the field who has been treating Lyme disease since 1989. Michelle M. Long, Lyme Disease Knows No Boundaries, Monterey County Weekly, May 8, 2008, available at: http://wwwmonterecountyweekly.com/ archives/2008/2008-May-08/lyme-disease-knows-no-boundaries/1/@@index. In fact, in light of her "massive" clinical experience, Dr. Green was invited to present her recommendations regarding the treatment of Lyme disease at the ILADS annual conference in 2005. http://www.ilads.org/archives.html

Page 3 -    CONSOLIDATED RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\j3284.wpd

the medical opinions relied on by defendant)[2] simply ignores the medical evidence on this point. As Dr. Green noted in her letter in support of Ms. Hinman's Level II Appeal, in the fall of 2002, Ms. Hinman rescued an owl that was covered with ticks, after which she discovered many ticks on her. Declaration of Matthew E. Malmsheimer in Support of Motion for Summary Judgment, ("Malms. Dec."), Ex. 6 at AR 1710. Not coincidentally, the onset of Ms. Hinman's lyme disease symptoms occurred approximately two months later in December 2002 which, as Dr. Green notes, would be consistent with late-stage Lyme disease. Id. Further, Ms. Hinman was routinely outdoors when at home in Oregon, and she had spent significant amounts of time outdoors in areas where the disease is considered endemic while touring with her high school softball team. Malms. Dec., Ex. 3 at AR 1696.

Dr. Brusch further opined that Ms. Hinman "has no significant supportive evidence of having lyme disease." Again, this ignores the medical evidence in the record. As Dr. Green noted, Ms. Hinman initially presented with flu-like symptoms that evolved over time, including the

---

[2] The initial denial letter dated September 15, 2005, stated that "The medical record does not support provider assessment for probable Lyme disease . . . there is no documentation of tick exposure; there is no documentation of symptoms; there is no documentation of a thorough medical examination[.]" Malms. Dec., Ex. 9. When the Hinman's submitted a Level I Appeal that contained all of the documentation that defendant initially claimed to be lacking, Malms. Dec., Ex. 3, defendant continued to ignore the exposure history, stating that "Review of the medical records does not yield information meeting the accepted definition of Lyme disease. The patient lives in an area where she could be exposed to infection with Lyme disease, but the record includes no documentation of an erythema migrans rash and seriologic tests do not meet the recommended criteria for positivity." Malms. Dec., Ex. 10 at 3. Thus, not only did defendant consistently ignore significant medical evidence in the record, but consistent with the results-driven decisionmaking process, it arbitrarily shifted its rationale for denying coverage for Ms. Hinman's Lyme disease from a lack of any "documentation" whatsoever to its lop-sided assessment, contrary to the medical evidence in the record, the she did not have the disease.

Page 4 -   **CONSOLIDATED RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\j3284.wpd

development of migraine headaches, significant, debilitating joint pain, night sweats and significant dizziness. Malms. Dec., Ex. 6 at AR 1715. As the disease progressed, Ms. Hinman experienced photophobia and developed significant cognitive difficulties. Id. at AR 1716. Ms. Hinman's physiological pain developed to the point that it became debilitating. Id. As Dr. Green concluded, and the medical sources she cited support, that clinical presentation was consistent with late-stage Lyme disease. Id. at AR 1713-1717.

Further, in addition to her clinical presentation, and contrary to Dr. Busch's conclusion, Ms. Hinman's blood tests revealed positive markers on the Western blot test for the spirochete responsible for Lyme disease. Those markers were the IgM and IgG, as well as the 31kdA Osp A band and the 39 kda band. Malms. Dec., Ex. 6 at AR 1720. Indeed, as Dr. Green noted, the positive result for the 39 kda band is considered to be the most specific positive blood marker for Lyme disease. Id. Thus, not only was Dr. Brusch wrong to conclude that "Ms. Hinman's Western blot was negative," he was also wrong to conclude that Ms. Hinman had "no significant supportive evidence of having Lyme disease." Malms. Dec., Ex. 11 at 2.

Finally, as previously noted, the diagnostic criteria relied upon by defendant was not designed to be used as a diagnostic tool. Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Pltf.'s Mem.") at 16; Malms. Dec., Exs. 15 and 23. Indeed, the CDC specifically counsels against their use as a diagnostic tool. Id. As the evidenced-based guidelines for the treatment of Lyme disease note, the two-tier CDC criteria "though arbitrarily chosen, . . . have been used as a rigid diagnostic benchmark that have prevented individuals with lyme disease from obtaining treatment. Diagnosis of Lyme disease by two-tier confirmation fails to detect up to

Page 5 -    **CONSOLIDATED RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\j3284.wpd

90% of cases and does not distinguish between acute, chronic, or resolved infection." Malms. Dec., Ex. 7 at 3. Accordingly, the evidence-based guidelines caution that "treatment decisions should not be based routinely or exclusively on laboratory findings." Id.

In light of the foregoing, it is clear that in order to support its conclusion that Ms. Hinman did not have Lyme disease, defendant's reviewing physicians had to place excessive weight on a clinically inappropriate CDC criteria that effectively excludes 90% of positive cases, while ignoring critical medical evidence in the record that contradicted their self-serving conclusion that Ms. Hinman did not have Lyme disease. Defendant's decision to selectively review the medical record and to ignore critically important medical evidence is arbitrary and capricious as a matter of law. See, e.g., Lee v. BellSouth Telecommunications, Inc., 318 Fed. Appx. 829, 840 (11th Cir. 2009) (ERISA plan administrator's denial of coverage was arbitrary and capricious when based on review that mischaracterized the medical evidence, ignored objective evidence submitted by treating physicians, and drew conclusion that was repeatedly and unambiguously contradicted by patient's physicians); Govindarajan v. FMC Corporation, 932 F.2d 634, 637 (7th Cir.1991) (administrator's decision is not based on substantial evidence when there has been excessive weighting of selected evidence, selective review of the evidence is an abuse of discretion and will support a reversal of the administrator's decision, even under the arbitrary and capricious standard of review).

### B. Defendant's Interpretation of the Plan to Exclude Long-Term Antibiotic Treatment Contradicts its Plain Language as Understood by an Ordinary Purchaser of Insurance.

Having abused its discretion in concluding that plaintiff did not have Lyme disease,

Page 6 -    **CONSOLIDATED RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\j3284.wpd

defendant compounds its error by applying additional, unwritten criteria with which it excluded the long-term antibiotic treatment prescribed by Dr. Green. That issue was fully briefed in plaintiff's initial motion, Pltf.'s Mem. at 17-20, but defendant fails to address the matter, effectively conceding plaintiff's point. Instead, defendant simply declares that "there is no evidence-based medicine that supports the approach of prolonged treatment of [L]yme disease." Def.'s Mem. in Support at 14.

However, as previously demonstrated, a substantial body of medical literature supports the long-term use of antibiotic treatment in cases such as Ms. Hinman's where Lyme disease went initially undiagnosed for a significant period of time. See Pltf.'s Mem. at 17-20, Malms. Dec., Exs. 12-14; 17-19. Defendant cannot refute that position. Rather, it contends that such studies were of "limited validity" because they were not conducted on humans. Def.'s Mem. in Support at 14. Defendant, however, cannot avoid the fact that its position is fatally flawed in two respects.

First, Dr. Brusch's judgment that the studies were of "limited value" is based solely on his subjective opinion, without any objective criteria against which to weigh that opinion. Defendant's reliance on such a subjective criterion is arbitrary and capricious because it "set no standard by which ... acceptance is to be measured" and, accordingly, is "not applicable in any measurable, objective sense." Bucci v. Blue Cross-Blue Shield of Connecticut, 764 F. Supp. 728, 732-33 (D. Conn. 1991).

Additionally, requiring the clinical studies cited by plaintiff to be conducted on humans in order to be deemed "valid" adds a requirement to the policy that is not contained in or supported by its plain terms. Defendant's policy with Ms. Hinman unequivocally states that "the usage of a drug

Page 7 -    **CONSOLIDATED RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\j3284.wpd

will be recognized as appropriate if it is recommended by a clinical study and recommended by a review article in a major peer reviewed professional journal. A medical device, drug or biological product that meets the above test <u>will not be considered experimental or investigational</u>." Malms. Dec. Ex. 2 at AR 25 (emphasis added). Here, Ms. Hinman's treatment and diagnosis were recommended by clinical studies and review articles published in major peer reviewed professional journals. See Malms. Dec., Exs. 6 and 7 (and sources cited therein); Exs. 12-14, 16-20, 24. Plainly, there is no requirement in defendant's plan that such studies be conducted on humans in order to be valid, and the studies supporting Ms. Hinman's treatment plainly fit within the saving clause in defendant's insurance contract. Defendant cannot (and does not) contend otherwise.

### C.     **Defendant's Conflict of Interest Weighs Particularly Heavily Against It.**

Given the fact that it ignored substantial medical evidence, placed undue weight on a clinically inappropriate diagnostic criteria, and unilaterally imported unwritten terms into Ms. Hinman's insurance policy, it is not surprising that defendant wishes to avoid the United States Supreme Court's ruling in <u>Metropolitan Life Ins. Co. v. Glenn</u>, ___ U.S. ____, 128 S. Ct. 2343 (2008). As the <u>Metropolitan Life</u> case held, a structural conflict of interest such as the one at issue here is one factor that this Court should consider in deciding whether defendant's denial was arbitrary and capricious. <u>Id</u>. at 2350-52. In this case, defendant's contention that the conflict of interest is "irrelevant to this court's review," Def.'s Mem. in Opposition at 5, is simply wrong. In light of the self-serving and arbitrary decisionmaking discussed above (and in plaintiff's original memo), it is reasonable to conclude that the structural conflict of interest poisoned defendant's entire decisionmaking process. At the very least, it is an additional factor that weighs heavily

Page 8 -    CONSOLIDATED RESPONSE TO DEFENDANT'S CROSS MOTION FOR
             SUMMARY JUDGMENT AND REPLY

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\j3284.wpd

against defendant.

### D. Defendant's Reliance on other Lyme Disease Cases is Misplaced.

Defendant relies on two cases in particular, Egan v. New York Care Plus Ins.Co., 277 A.D.2d 652 (N.Y. 2000) and Risenhower v. Bayer Corp. Group Health Plan, 83 F.Supp.2d 408 (S.D.N.Y. 2000), as support for its position that its decision in this case was reasonable. See Def.'s Mem. in Support at 11-12. However, aside from the bare fact that those decisions dealt with a denial of coverage for Lyme disease, neither of them are applicable to this case because neither of those cases involved a defendant that willfully ignored significant medical evidence in the record, overly weighted an improper criteria for diagnosis, unilaterally inserted unwritten terms and conditions into the plan, and interpreted the terms of an insurance plan contrary to state insurance law.

The most glaring example is defendant's reliance on Egan v. New York Care Plus Ins.Co. Defendant cites that case for two propositions: 1) that Ms. Hinman's antibiotic therapy was "not 'generally accepted therapy,'" Def.'s Mem. in Opp., at 7; and 2) that this Court should find that it was reasonable to deny Ms. Hinman's treatment because Egan was not an ERISA claim and the Egan court "concluded that the denial was in accordance with the provisions of the insurance contract ... without giving any deference to the defendant's conclusion." Def.'s Mem. in Support at 11-12. Egan certainly does not stand for either of those propositions as a general matter. It doesn't even stand for those propositions on the facts of that case.

Egan never reached the issue of whether the interpretation of the defendant's plan was reasonable under any standard. Rather, it was decided on two completely separate substantive

Page 9 -     **CONSOLIDATED RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\j3284.wpd

grounds <u>unrelated</u> to the interpretation of any insurance plan. The first ground was that the plaintiff could not pursue his fraud claim because it related to a breach of contract and there was no independent duty owed to the plaintiff by the defendant. <u>Egan</u>, 277 A.D.2d at 653. The second was that the plaintiff's consumer law claim was a private contract dispute that was not predicated on any conduct affecting the public generally. <u>Id.</u> Defendant's reliance on <u>Egan</u> is plainly misplaced.

While <u>Risenhoover</u> is slightly more applicable to this case in that it actually addressed the issue of whether an administrator's denial of treatment for Lyme disease was reasonable, it is no more useful for defendant. That is so because, unlike here, the plan in <u>Risenhoover</u> had no saving provision that specifically allowed treatments that were "recommended by a clinical study and recommended by a review article in a major peer reviewed professional journal." <u>See</u> 83 F.Supp.2d at 412 (no saving provision). Further, even the plaintiff's own physician in <u>Risenhoover</u> was uncertain about whether the plaintiff had Lyme disease and whether the antibiotic treatment at issue was appropriate. <u>Id.</u> Here, as discussed above and in plaintiff's original memo, Ms. Hinman's treatment plainly falls within the saving provision of defendant's plan for treatment recommended by a clinical study and by a review article in a major peer reviewed journal. Further, Dr. Green was confident in both her diagnosis and treatment of Ms. Hinman's condition.[3]

---

[3] The other ERISA cases relied upon by defendant are similarly distinguishable as none involved a defendant that placed undue weight on a clinically inappropriate diagnostic criteria, repeatedly ignored critical medical evidence in the record, and unilaterally imported requirements that contradicted the plain terms of the plan. <u>See</u>, <u>Ortlieb v. United HealthCare Choice Plans</u>, 387 F.3d 778, 782-84 (8th Cir. 2004) (denial of coverage not an abuse of discretion because administrator engaged four physicians who reviewed entirety of patient's medical records and all concluded that procedure was investigational, but claimant failed to provide any evidence to the

Page 10 -     **CONSOLIDATED RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\j3284.wpd

### III.   CONCLUSION.

As set forth above and in plaintiff's original memo, defendant's decision to deny coverage of the treatment of Ms. Hinman's Lyme disease was based on its refusal to acknowledge critical medical evidence, its overemphasis of a criteria that was not designed to be used for diagnostic purposes, and its unilaterally importing unwritten terms and conditions into its policy.  As such, its denial was, by definition, arbitrary and capricious.  This Court should accordingly grant plaintiff's motion and order defendant to cover Ms. Hinman's treatment in accordance with the terms of its insurance policy.

DATED this 21st  day of July, 2009.

HAGLUND KELLEY HORNGREN JONES & WILDER LLP

By: /s/Christopher Lundberg
Christopher Lundberg, OSB No. 94108
Matthew E. Malmsheimer, OSB No. 03384
Attorneys for Plaintiff

---

contrary); Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192 (8th Cir. (2002) (denial of coverage upheld because, among other things, administrator's interpretation did not conflict with substantive requirement of ERISA and was not contrary to the clear language of the plan); Parks v. Blue Cross & Bluie Shield of Oregon, 116 F.3d 485, 1997 WL 303308 (9th Cir. 1997) (unpublished opinion; holding that administrator did not abuse its discretion because denial complied with plain terms of plan) .

Page 11 -   **CONSOLIDATED RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\j3284.wpd