**SAMUEL K. ANDERSON, Oregon State Bar ID Number 035060**
Internet E-mail address:  sanderson@davisrothwell.com
**DAVIS ROTHWELL EARLE & XOCHIHUA P.C.**
1300 Southwest Fifth Avenue, Suite 1900
Portland, Oregon 97201-5604
Telephone:  (503) 222-4422
Facsimile:  (503) 222-4428

**JOSHUA BACHRACH,** *pro hac vice* **application to be submitted**
Internet E-mail address: joshua.bachrach@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKLER, LLP**
Independence Square West
The Curtis Center, Suite 1130 East
Philadelphia, PA 19106-3308
Telephone: (215) 627-6900
Facsimile:  (215) 627-2665

Attorneys for Defendant John Alden Life Insurance Company dba Assurant Health

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **TALIA HINMAN** and **MELINDA HINMAN**, | No. CV-08-1070 PK |
| **Plaintiff,** | |
| v. | **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **JOHN ALDEN LIFE INSURANCE COMPANY** d/b/a **ASSURANT HEALTH,** | |
| **Defendant.** | |

Plaintiffs' response to defendant's summary judgment motion consists mainly of

conclusory statements.  Relying entirely on the report of Dr. Greene, plaintiffs argue that Ms.

Hinman's diagnosis of Lyme disease should not be disputed.  Plaintiffs also argue that the

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 Southwest Fifth Avenue
Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile
(503) 222-4428

treatment provided by Dr. Greene was not experimental and, therefore, should be covered. Plaintiffs' positions are not supported by the facts in the administrative record, the language in the policy, or the applicable law.

According to plaintiffs, the only way that the reviewing physicians could conclude that Ms. Hinman did not have Lyme disease was for them to ignore the medical evidence. If this is true, then Ms. Hinman's own doctors, with the exception of Dr. Greene, also ignored the medical evidence as none of them diagnosed her with Lyme disease after a multitude of tests. Next, plaintiffs take out of context a reviewing doctors' statement that there was no documentation of tick exposure. The doctors did not state that ticks do not exist where plaintiffs reside as suggested in their brief. Instead, they were commenting on the fact that there was no record of any rash consistent with exposure to a tick bite. (Declaration of Samuel K. Anderson, Exhibit A, p. 4).

On page 4 of their brief, plaintiffs attribute Ms. Hinman's alleged tick exposure to the rescue of an owl "in the fall of 2002." According to plaintiffs, "[n]ot coincidentally the onset of [her] Lyme disease symptoms occurred approximately two months later in December 2002." The problem with this chronology is that their argument is off by over one year. Ms. Hinman came into contact with the owl in "[l]ate 2003", not 2002. (*See* Pls.' Ex. 5, p. 18). Nor was this owl "covered with ticks" as claimed by plaintiffs. Instead, Ms. Hinman told her doctor that the owl "had some ticks on it." Finally, Ms. Hinman did not tell Dr. Townes that after being near the owl she "discovered many ticks on her" as plaintiffs now claim. (*See* Pls.' Br., p. 4, and Pls.' Ex. 5, p. 18).

Other statements by plaintiffs are also inconsistent with the facts. Plaintiffs attempt to attribute Ms. Hinman's hip pain to her Lyme disease; however, this is contradicted by the records.

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 Southwest Fifth Avenue
Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile
(503) 222-4428

First of all, this was the only symptom she had at the time. More important, the doctors attributed the hip pain to intrapelvic fluid and bursitis. (*See* Pls.' Ex. 5, p. 1).

The most telling record that contradicts plaintiffs' account is the April 27, 2004 report from Pediatric Gastroenterology & Nutrition. (*See id.* at pp. 3-5). Ms. Hinman stated that her illness began in *January of 2004*, not in 2002 as she now claims. More important, Ms. Hinman was not the only person who became ill in January 2004. Members of her family and friends also became ill with the *identical symptoms*. (*See id.* at pp. 3-5). None of them were diagnosed with Lyme disease, however. Plaintiffs' own description of the underlying facts contradicts the position they are now taking and also undermines the opinions of Dr. Greene.

As stated above, it was not just the reviewing doctors who did not believe that Ms. Hinman had Lyme disease. In May 2004, Dr. Weller noted the numerous negative tests for Lyme disease. (*See id.* at p. 15). Dr. Townes also noted the numerous negative tests. (*See id.* at p. 17). Dr. Townes further stated that "[g]iven the absence of any signs of inflammation on examination or by previous laboratory tests and the lack of clinical progression over a one-year period makes an infectious disease cause of this patient's illness unlikely." (*See id.* at p. 19). Another doctor remarked that the symptoms might be "psychosomatic." (*See id.* at p. 15). If the diagnosis of Lyme disease was as clear as plaintiffs would have this Court believe, there would have been no need for Ms. Hinman to travel to San Francisco to obtain this diagnosis.

Plaintiffs also dispute John Alden's conclusion that the treatment provided by Dr. Greene was experimental and, therefore, excluded from coverage. In its opening brief, defendant cited to two cases involving Lyme disease which support its denial of benefits. In response, plaintiffs do not

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
L:\18\HINMAN\PLD\REPLY_MSJ.DOC

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 Southwest Fifth Avenue
Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile
(503) 222-4428

cite to any decisions that reached the opposite conclusion. Nor do plaintiffs distinguish these cases in any meaningful way. Referring to the decision in *Egan v. New York Care Plus Ins. Co.*, 277 A.D.2d 652 (N.Y. 2000), plaintiffs argue that the basis for the court's decision in favor of defendant was unrelated to the interpretation of the policy. Plaintiffs take too narrow a view of the holding. In *Egan*, the defendant denied coverage for "prolonged intravenous antibiotic therapy" for the treatment of Lyme disease after concluding that the treatment was not generally accepted for the treatment of the disease. The plaintiff specifically alleged that the defendant committed fraud and violated New York law by refusing to pay for this treatment. The Court dismissed these claims. Plaintiffs miss the point in this decision. John Alden is not alone in concluding that intravenous antibiotic therapy is not generally accepted treatment for Lyme disease.

The second case cited by defendant is *Risenhoover v. Bayer Group Health Plan*, 83 F. Supp. 2d 408 (S.D.N.Y. 2000). This case involved a plan's denial of reimbursement for IV antibiotic treatment for Lyme disease. The plan denied the claim after concluding that the treatment was not medically necessary. Plaintiffs argue that *Risenhoover* can be distinguished because that plan "had no saving provision that specifically allowed treatments that were 'recommended by a clinical study and recommended by a review article in a major peer reviewed professional journal.'" (*See* Pls.' Br., p. 10). There is no "saving" clause in the John Alden policy. Instead, plaintiffs have quoted from only a single line from 1 of 5 criteria that are *collectively* used in determining whether a service is "experimental or investigational." Plaintiffs' argument fails to fully address the one criterion and completely ignores four others.

///

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 Southwest Fifth Avenue
Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile
(503) 222-4428

On page 7, plaintiffs argue that defendant conceded that it used unwritten criteria when it excluded coverage for the treatment. This is nonsense. Plaintiffs are referring to John Alden's refusal to conclude that the treatment was medically necessary based on a study of animals rather than humans. It is implicit in the language in the policy described below that the treatment must be effective on humans. This is consistent with the plan provisions that plaintiffs ignore.

First, the plan in this case grants to John Alden discretionary authority to determine whether treatment is "medically necessary." (Anderson Decl., Ex. A, p. 3). More important, among the criteria for deciding whether treatment is experimental or investigational is "[c]onclusive evidence from the published peer-reviewed medical literature" that the "treatment has a definite positive effect on health outcomes." (Anderson Decl., Ex. A, p. 1). This language can only refer to health outcomes in humans. Any other interpretation is unreasonable. This is further demonstrated by the fifth criteria. This one requires published peer-reviewed medical literature showing improvement in health outcomes "in standard conditions of medical practice outside clinical investigatory settings." (Anderson Decl., Ex. A, p. 2). If animal studies were sufficient to satisfy the criteria, it would refer to "veterinary practice" rather than "medical practice." Plaintiffs' argument lacks merit.

It is plaintiffs who concede a crucial point. They acknowledge that there are no studies conducted on humans supporting the medical necessity of the treatment Ms. Hinman received. (*See* Pls.' Br., p. 8). Plaintiffs also do not dispute that the "best-conducted study" on the long-term use of intravenous antibiotic treatment for Lyme disease concluded that there was "no beneficial treatment effect of prolonged treatment upon cognitive function or the laboratory measurements of persistent infection" and that the use of this treatment is unsupported. (Anderson Decl., Ex. A, p. 5). John

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
111 Southwest Fifth Avenue
Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 • Facsimile
(503) 222-4428

Alden's conclusion that the medical treatment was "experimental or investigational" cannot be considered arbitrary and capricious under the language in these facts.

**CONCLUSION**

The question before this Court is whether John Alden's decision was clearly erroneous. *Jordan v. Northrop Grumman Corp Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004). As long as John Alden's interpretation of the plan is "reasonable," that interpretation must prevail. *Clark v. Wash. Teamsters Welfare Trust,* 8 F.3d 1429, 1432 (9th Cir. 1993). For the reasons discussed above and in defendant's opening brief, the denial of benefits in this case cannot be considered arbitrary and capricious and should be affirmed.

DATED this 3rd day of August, 2009.

**DAVIS ROTHWELL EARLE & XÓCHIHUA P.C.**

*By* ___*/s/ Samuel K. Anderson*_____
**SAMUEL K. ANDERSON, OSB # 035060**
(503) 222-4422
Attorneys for Defendant John Alden Life Insurance
Company dba Assurant Health



DAVIS ROTHWELL
EARLE & XÓCHIHUA P.C.
111 Southwest Fifth Avenue
Suite 2700
Portland, Oregon 97204-3650
Telephone (503) 222-4422 ● Facsimile
(503) 222-4428