Christopher Lundberg, OSB No. 94108
clundberg@hk-law.com
Matthew E. Malmsheimer, OSB No. 03384
mmalmsheimer@hk-law.com
HAGLUND KELLEY HORNGREN JONES & WILDER LLP
101 S.W. Main Street, Suite 1800
Portland, Oregon 97204-3226
Phone: (503) 225-0777
Facsimile: (503) 225-1257

    Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**TALIA HINMAN** and **MELINDA HINMAN**, individuals

    Plaintiffs,

    v.

**JOHN ALDEN LIFE INSURANCE COMPANY,** a Minnesota corporation, dba **ASSURANT HEALTH**

    Defendant.

No. 3:08-CV-01070-PK

**OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

## I.    INTRODUCTION.

In accordance with Fed.R.Civ.P. 72(b), plaintiffs respectfully request that the United States District Judge reviewing this matter reject Magistrate Judge Papak's Findings and Recommendations as to their claims under ERISA and grant their Motion for Summary Judgment. Contrary to Judge Papak's Findings and Recommendations, plaintiffs have established that

Page 1 - **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\LH3449.wpd

defendant's interpretation of the employee benefit plan at issue ignored significant evidence in the record and was contrary to the plain terms of that plan. Accordingly, summary judgment should be entered in plaintiffs' favor for the damages that they seek.

## II.    SUMMARY OF FACTS.

Plaintiffs have set forth a complete recitation of the facts in their Concise Statement of Material Facts (Dkt. No. 9), Memorandum in Support of Plaintiff's Motion for Summary Judgment (Dkt. No. 10), and the Declaration of Matthew E. Malmsheimer in Support of Motion for Summary Judgment ("Malms. Decl.") (Dkt. No. 11). To avoid undue repetition, the following is a summary of the facts that are most directly relevant to these objections with citations to the original sources where appropriate.

Talia Hinman was a vibrant and active teenager who initially started showing symptoms of Lyme disease in the winter of 2002. These symptoms included flu-like fatigue which did not resolve ordinarily. Ms. Hinman's symptomology developed over the course of the spring and summer of 2003, when it began to significantly interfere with her ability to engage in the life that she had always known. By the spring of 2004, Ms. Hinman had lost 20 lbs. and had begun to develop daily migraine headaches and suffer from recurring bouts of nighttime sweating and frequent dizziness. Additionally, Ms. Hinman developed gastrointestinal symptoms including alternating constipation and diarrhea, nausea and vomiting as well as central nervous system, joint and peripheral nervous system difficulties. Ms. Hinman also developed cognitive problems and began having difficulty concentrating, and she developed shooting pains in her hips, neck and lower back, along with extremely stiff neck and severe pain in her lower back and hips. All of these symptoms effectively brought Ms. Hinman's young life to a halt.

Page 2 - **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\LH3449.wpd

As Ms. Hinman's disease progressed between January and October, 2004, she was seen by numerous specialists including a PNP pediatric gastroenterolgist, two separate gastroenterolgists, and ENT specialist, a neurologist, a psychologist, an infectious disease specialist and an endocrinologist.  None of these healthcare providers were able to diagnose Ms. Hinman's condition.  Finally in October, 2004, Ms. Hinman consulted Dr. Christine Green, an expert in the diagnosis and treatment of Lyme disease who practices medicine in the San Francisco Bay area. Dr. Green graduated from the University of California San Diego School of Medicine and trained in family practice at Stanford University's family practice residency program.  Her office in San Francisco is devoted solely to treating Lyme disease patients where she practices with Dr. Rafael Stricker, the President of the International Lyme and Associated Disease Society ["ILADS"].  She has specialized in the treatment of Lyme disease for over 15 years.

Dr. Green performed a number of tests of Ms. Hinman in order to dispel alternate causes of her condition, considered Ms. Hinman's history of exposure to the Lyme vector tick, and closely reviewed Ms. Hinman's medical history and symptoms.  Dr. Green also conducted laboratory tests and determined that it was "positive for Lyme exposure and revealed a positive IgM and IgG Western blot to Borrelia burgdorferi.  Patient had the 31kdA Osp A band as well as the 39kda band."  Malms. Decl., Ex. 7 at 3.  Based on this extensive assessment of Ms. Hinman, Dr. Green concluded that she most "likely had mononucleosis and was infected with Borrelia burgdorferi." Dr. Green noted that such patients typically have "prolonged courses of Lyme disease."  Id.

In accordance with this diagnosis, Dr. Green initially prescribed oral antibiotic treatment. While that regimen produced a positive result for Ms. Hinman, she did not respond completely to the oral antibiotics and as a result was placed on intravenous antibiotic treatment.  Id.  Dr. Green's

Page 3 - **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

**HAGLUND KELLEY HORNGREN JONES & WILDER LLP**
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\LH3449.wpd

diagnostic and treatment plan followed a well established and peer supported treatment protocol involving an individualized assessment of Ms. Hinman's needs. Indeed, Dr. Tony Gay, Ms. Hinman's family physician, reviewed Dr. Green's diagnosis and treatment recommendations and also found them to be medically appropriate. Malms. Decl., Ex. 5 at 26-29. The treatment prescribed by Dr. Green successfully cured Ms. Hinman's Lyme disease and allowed her to return to her normal life.

Despite Ms. Hinman's long and substantial clinical history of Lyme disease symptomology, Dr. Green's clinical diagnosis that relied on laboratory testing, Ms. Hinman's history of exposure, and the clinical presentation consistent with the ILADS evidence based guidelines for the treatment and care of Lyme disease, and the success of the antibiotic protocol that was supported by peer-reviewed literature and clinical studies, defendant denied plaintiff's claim for coverage of her diagnosis and treatment. In doing so, defendant blinded itself to the medical evidence in the record and concluded that Ms. Hinman did not have Lyme disease and, contrary to the plain terms of its policy, declared that her treatment was "experimental and/or investigational." Defendant's decision in that regard was arbitrary and capricious as a matter of law, and accordingly this Court should reverse its denial.

### III. LEGAL STANDARD.

Summary judgment is appropriate when the evidence before the court and the reasonable inferences that flow from that evidence establish that there are no genuine factual issues and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); <u>T.W. Elec. Serv. V. Pac. Elec. Contractors</u>, 809 F.2d 626, 630 (9th Cir. 1987). As a general matter, where, as here, an employee benefit plan confers discretionary authority upon the administrator to interpret the terms

Page 4 - **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\LH3449.wpd

of the plan and make final benefit decisions, the administrator's coverage decisions are reviewed for an abuse of discretion. Abatie v. Alta Health Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). As relevant to this case, an ERISA administrator abuses its discretion if it: 1) construes provisions of the plan in a way that conflicts with its plain terms; or 2) relies on clearly erroneous findings of fact. E.g., Willborn v. American Express Group Disability Plan, 1 Fed. Appx. 731, 733 (9th Cir. 2001).

Defendant's discretion is not unbounded. First, because this benefit plan is an insurance policy, it remains subject to state law regulating insurance. 29 U.S.C. § 114(b)(2)(A); Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 538-39 (9th Cir. 1990). This includes general rules of construction related to interpretation of the insurance contract. Kunin, 910 F.2d at 538-41. Under Oregon law courts are to interpret the terms of an insurance policy in manner consistent with the understanding of the ordinary purchaser. Botts v. Hartford Accident & Indem. Co., 284 Or. 95, 98-99 (1978). Ambiguities in an insurance policy must be construed against the insurer such that any uncertainty is resolved in favor of coverage. North Pacific Ins. Co. v. Hamilton, 332 Or. 20, 25 (2001). This is particularly true when interpreting exclusionary clauses such as those at issue in this case. Insurance Co. of N. Am. v. Howard, 679 F.2d 147, 150 (9th Cir. 1982) (applying Oregon law).

Additionally, under ERISA the administrator must "discharge its duties in respect to discretionary claims processing solely in the interests of the participants and beneficiaries of the plan." Metropolitan Life Ins. Co. v. Glenn, __U.S.__, 128 S.Ct. 2343, 2350 (2008)(citing 29 U.S.C. § 1104(a)(1)). In that regard, where the administrator making its decision is under a conflict of interest, the reviewing court must consider that conflict of interest against the

Page 5 - **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\LH3449.wpd

administrator when analyzing whether a denial of benefits was arbitrary, capricious or an abuse of discretion. Id. at 2351-52. A conflict of interest exists where, as here, an insurer both funds the benefit plan and evaluates claims. Id. at 2349-50; Abatie, 458 F.3d at 965.

## IV.     ARGUMENT.

Judge Papak's Findings and Recommendations are fatally flawed in two respects. First, Judge Papak incorrectly concluded that defendant's conclusion that Ms. Hinman did not suffer from Lyme disease was not arbitrary and capricious as a matter of law. Second, Judge Papak apparently misread the peer-reviewed articles and clinical trials submitted by plaintiff that support her treatment. These errors render Judge Papak's recommendations fatally flawed and require this Court's reversal.

### A.     Objection No. 1: Judge Papak Erroneously Concluded That Defendant Did Not Abuse its Discretion In Deciding That Ms. Hinman Did Not Have Lyme Disease.

The Court's first error is in finding that defendant's conclusion that Ms. Hinman did not suffer from Lyme disease was not an abuse of discretion. Contrary to Judge Papak's findings, defendant abused its discretion not because it reached a different conclusion than Ms. Hinman's treating physician, but rather because the manner in which defendant reached that conclusion ignored critical medical evidence and imported hidden terms, contrary to law.

First, both of defendant's reviewing physicians ignored important medical evidence in the record in concluding that Ms. Hinman did not have Lyme disease. Contrary to defendant's conclusion and Judge Papak's findings, defendant's conclusion was not supported "by all of [Ms. Hinman's] own examining physicians other than Dr. Green[.]" Findings and Recommendation at 17. A review of Ms. Hinman's medical records show that her treatment providers were uniformly

Page 6 - **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\LH3449.wpd

at a loss as to the cause of Ms. Hinman's condition, and that they uniformly noted a symptomology consistent with Lyme disease.  Malms. Decl., Ex. 5 at 1-24; Ex. 6 at AR 1713-17; Ex. 14 at S5-S6.. Indeed, while some initial laboratory tests for Lyme disease came back negative, the lab tests administered by Dr. Green "revealed a positive IgM and IgG Western blot" along with a positive 31kdA Osp A band and 39 kda band.  Malms. Decl. at Ex. 6, p. AR1720.  The 39 kda band is considered the most specific Lyme disease band.  Id.  Finally, there was evidence that Ms. Hinman had traveled extensively in areas where the Lyme disease tick is endemic and had been exposed to ticks from an owl that she had rescued.  Id. at AR 1710, Ex. 5 at 18.

Defendant's medical reviewers ignored this evidence in concluding that Ms. Hinman did not have Lyme disease.  In its denial of plaintiffs' Level I Appeal, defendant concluded that Ms. Hinman's medical records failed to "yield information meeting the accepted definition of Lyme disease" and that her "seriologic tests do not meet the recommended criteria for positivity."  Malms. Decl., Ex. 10 at 3.  Defendant could only make that assertion by applying the diagnostic criteria in its Medical Policy that states that a diagnosis of Lyme disease requires: "(1) clinical findings consistent with the disease; (2) a history of exposure in an endemic area; and (3) either (a) the presence erythema migrans or (b) a positive ELISA and Western blot test."  Malms. Decl., Ex. 8 at AR 1530.

As noted above, Ms. Hinman had an extensive history of clinical symptoms consistent with Lyme disease, a history of tick exposure and travel in endemic areas, and a positive Western blot. Thus, defendant's sole criteria for its denial was the absence of a positive ELISA.  The two-tiered ELISA/Western blot criteria that defendant applied is, according to the Centers for Disease Control which developed the criteria, only a "surveillance case definition" designed to "establish

Page 7 - **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\LH3449.wpd

uniform criteria for <u>disease reporting</u>." Malms. Decl., Ex. 23 (emphasis added). According to the CDC, that criteria "<u>should not be used</u> as the <u>sole criteria</u> for establishing <u>clinical diagnoses,</u> determining the standard of care necessary for particular patient, . . . <u>or providing standards for reimbursement</u>." <u>Id.</u> (emphasis added). Indeed, even for its use as a surveillance case definition, the Western blot test is used to confirm a positive ELISA because the Western blot is more accurate in assessing the presence of Lyme disease antibodies. Malms. Decl., Ex. 6 at AR1717. Thus, on its face, defendant's sole reliance on the two-tiered criteria and the absence of a positive ELISA, while ignoring the wealth of other diagnostic indicators under its own criteria, is arbitrary and capricious. Furthermore, the unilateral importation of that flawed criteria into its plan in order to deny Ms. Hinman's claim is arbitrary and capricious as a matter of law. <u>Venez. v. Prudential Health Care Plan of New York, Inc.</u>, 943 F.Supp. 332, 341-42 (S.D. NY 1996).

Furthermore, in its denial of Ms. Hinman's Level II Appeal, defendant's medical reviewer concluded that "[t]he medical record does not support provider assessment of probable Lyme disease" because "there is no documentation of tick exposure, there is no documentation of symptoms, there is no documentation of a thorough medical examination ... Lyme IgG western blot did not support diagnosis of Lyme disease." Malms. Decl., Ex. 9 at 1. Defendant could only make such a statement in the face of the medical evidence in this record by willfully ignoring that evidence. As a matter of law, such a refusal to consider valid medical evidence and rendering a decision based on an inadequate review of the medical record, without providing contrary medical evidence, is an abuse of discretion. <u>Kunin</u>, 910 F.2d at 538 (9th Cir. 1990); <u>see also</u>, <u>Lee v. BellSouth Telecommunications, Inc.</u>, 318 Fed. Appx. 829, 840 (11th Cir. 2009) (ERISA plan administrator's denial of coverage was arbitrary and capricious when based on review that

Page 8 - **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\LH3449.wpd

mischaracterized the medical evidence, ignored objective evidence submitted by treating physicians, and drew conclusion that was contradicted by patient's treating physicians); Govindarajan v. FMC Corporation, 932 F.2d 634, 637 (7th Cir.1991) (administrator's decision is not based on substantial evidence when there has been excessive weighting of selected evidence, selective review of the evidence is an abuse of discretion and will support a reversal of the administrator's decision, even under the arbitrary and capricious standard of review).

> **B.     Objection No. 2:  Judge Papak Erroneously Concluded That The Peer-Reviewed Articles And Clinical Studies Cited By Plaintiff Did Not Support Her Long-Term Antibiotic Treatment.**

The Court compounds its error described above by misreading the peer review articles submitted by plaintiff and, as a result, mistakenly concluding that the "record does not support the finding that the treatment [Ms. Hinman] received has been recommended by a review article in a major peer-reviewed professional journal." Findings and Recommendation at 16. The Court first correctly notes that, under the Health Insurance Plan at issue, any "medical device, drug or biological product that [is both recommended by a clinical study and recommended by a review article in a major peer reviewed professional journal] will not be considered experimental or investigational." Findings and Recommendations at 14 (citing Policy at 16) (emphasis added); see also, Malms. Decl., Ex. 2 at AR25. However, the Court's review of the literature submitted by plaintiff incorrectly concludes that it does not support plaintiff's treatment. Contrary to the Court's conclusion, the long-term antibiotic treatment that Ms. Hinman received is recommended by at least one review article in a major peer reviewed professional journal and numerous clinical studies cited in that article. Thus, under the plain terms of the Plan set forth above, by definition it is not "experimental or investigational."

Page 9 - **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\LH3449.wpd

First, the Court mistakenly concludes that the Stricker article, provided by plaintiff in the Declaration of Matthew E. Malmsheimer in Support of Motion for Summary Judgment at Ex. 17, "concluded that the risks of 3-4 months of antibiotic treatment were "justifiable" in some instances, but fell short of recommending the extreme long term antibiotic treatment Ms. Hinman received." Findings and Recommendations at 15. The Stricker article, in fact, broadly reviewed the medical literature and a number of clinical studies that analyzed the efficacy of long-term antibiotic treatment and concluded that "antibiotic therapy should be administered in a rotating and open-ended manner." Ex. 17 at 154. The Stricker article went on to note that Lyme disease shares certain features with other microbial and chronic infections, which require prolonged antibiotic therapy of between 6 and 36 months, and concluded that the risks of long term treatment are justifiable in such cases. Id. Reasoning by analogy, the Stricker article recommends prolonged antibiotic therapy as both useful and justifiable in chronic Lyme disease. Id.

In fact, the clinical studies that the Stricker article relied upon studied Lyme disease treatment regimens of between one and twenty-three months. Id. at 151-153. One study followed a patient who had suffered from a deteriorating condition over two years, despite repeated short-term antibiotic regimens. After a 12-month course of intravenous antibiotics, followed by 11 months of oral antibiotics, the patient's condition improved significantly. Id. at 152-53 (citing Ferri i Torjada, et al., LYME BORRELIOSIS, Lancet 345: 1436-37 (1995). The largest study that the Stricker article examined included 277 patients who were treated for between one and eleven months, with a mean duration of treatment of four months. Id. (citing Donta ST., TETRACYCLENE THERAPY FOR CHRONIC LYME DISEASE, Clinical Infectious Disease, 25 (supp. 1): S52-6 (1997)). That study showed that 33% of patients showed improvement after 2 months treatment, and that

Page 10 - **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\LH3449.wpd

61% of patients showed improvement after three months treatment.  Id.  In addition to those studies, Stricker reviewed two placebo-controlled trials, one of which was an oral antibiotic treatment regimen of three months duration and the other which was an intravenous trial of ten weeks duration.  Stricker noted that those trials recommended that "longer courses of antibiotic therapy are useful in patients with persistent Lyme disease."  Id. at 153 (citing B. A. Fallon, PRELIMINARY RESULTS FROM COLUMBIA CONTROLLED LYME TREATMENT STUDY, Program and Abstracts of the Columbia University/LDA Conference, Lyme & Other Tick-borne Diseases: Emerging Tick-Borne Disease (Phila. 2005), and, D. J. Cameron, RESULTS FROM LYME DISEASE TREATMENT TRIAL, Program and Abstracts of the Columbia University/LDA Conference, Lyme & Other Tick-borne Diseases: Emerging Tick-Borne Disease (Phila. 2005)).[1]

Thus, Stricker's conclusion that antibiotic treatment of persistent Lyme disease should be "administered in a rotating and open-ended manner" is consistent with the clinical studies cited in that review article that recommend long-term antibiotic treatment.  It is also consistent with the evidence-based guidelines for the treatment of Lyme disease published by ILADS, which recommend that "the management of chronic Lyme disease must be individualized, since patients will vary according to severity of presentation and response to previous treatment."  Ex. 14 at S9.  Plainly, given that the Stricker article reviewed clinical trials lasting between one and twenty-three

---

[1] As relevant here, the term "recommend" carries a number of similar connotations, including "to praise or commend to another as being worthy or desirable; endorse; to make attractive or acceptable; to counsel or advise (that something be done) [.]" THE AMERICAN HERITAGE DICTIONARY, 1034 (Second College Ed., 1985).  Plainly, the studies cited above fit that dictionary definition of the term "recommend."  However, to the extent that there is any ambiguity as to whether the review article and studies cited above "recommend" plaintiff's treatment as that term is used in the policy, such ambiguity must be resolved in plaintiffs' favor and the coverage of Ms. Hinman's treatment.  North Pacific Ins. Co., 332 Or. at 25; Insurance Co. of N. Am. v. Howard, 679 F.2d at 150.

Page 11 - **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\LH3449.wpd

months in duration, and recommended that "antibiotic therapy should be administered in a rotating and open-ended manner," that review article and the clinical trials included therein support Ms. Hinman's 12-month long treatment in this case.  More importantly for this Court's decision, those authorities meet the plain language of defendant's policy, which states that a treatment regimen that is "recommended by a clinical study and recommended by a review article in a major peer reviewed professional journal" will "<u>not be considered experimental or investigational</u>."  Malms. Decl., Ex. 2 at AR25 (emphasis added).

The Stricker review article and the clinical trials contained in that review article recommend the long-term antibiotic treatment that successfully cured Ms. Hinman of Lyme disease.  Plainly, plaintiff has supplied the necessary studies and peer-reviewed articles to qualify for the exception set forth in defendant's plan.[2]  Accordingly, under the plain terms of that plan, Ms. Hinman's course of long-term antibiotic treatment is not to be "considered experimental or investigational."

: : :

## V.    CONCLUSION.

---

[2] To the extent that this Court reads the studies described above to recommend a treatment regimen shorter than twelve months, defendant's denial of plaintiff's treatment was still contrary to the plain terms of its plan, at least as to that shorter period, and plaintiff is entitled to coverage for at least that shorter treatment period.

Page 12 - **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\LH3449.wpd

As set forth above, defendant's denial of Ms. Hinman's treatment was arbitrary and capricious and an abuse of defendant's discretion. Magistrate Judge Papak erred in concluding otherwise. Accordingly, this Court should reject Judge Papak's Recommendation, and grant plaintiff's motion for summary judgment.

DATED this 9th day of December, 2009.

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
By: /s/Christopher Lundberg
Christopher Lundberg, OSB No. 94108
Matthew E. Malmsheimer, OSB No. 03384
Attorneys for Plaintiff

Page 13 - **OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**

HAGLUND KELLEY HORNGREN JONES & WILDER LLP
One Main Place
101 S.W. Main Street, Suite 1800
Portland, OR 97204-3226
503.225.0777 / f 503.225.1257

F:\MEM\LH3449.wpd